## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

E-TELEQUOTE INSURANCE, INC.,

      Plaintiff,

v.                                   Case No: 8:22-cv-1222-WFJ-JSS

AUBREY MAYBERRY; ALISA
CRAVEY; RICH BUDWELL;
JONATHAN MOORE; MARIO
GUTIERREZ; JOHN TELLEZ;
MYPLANADVOCATE INSURANCE
SERVICES, INC.; and
MYPLANADVOCATE INSURANCE
SOLUTIONS, INC.,

      Defendants.

_____/

## ORDER AND PRELIMINARY INJUNCTION

This matter comes before the Court on Plaintiff e-Telequote Insurance,
Inc.'s ("Plaintiff" or "ETQ") Motion for Preliminary Injunction against Defendants
Aubrey Mayberry, Alisa Cravey, Rich Budwell, and Jonathan Moore (collectively,
for purposes of this Order, "Defendants"). Dkt. 28. Defendants filed a response in
opposition, Dkt. 86, to which Plaintiff replied, Dkt. 93. On December 22, 2022, the
Court held an evidentiary hearing. *See* Dkt. 95. Upon careful consideration, the
Court grants Plaintiff's Motion for Preliminary Injunction as set forth below.

## BACKGROUND

With an emphasis on Medicare, Plaintiff is a digital insurance agency that sells health insurance policies. Dkt. 124 ¶ 20. Defendants are former employees of Plaintiff. *Id.* ¶¶ 12−15. When hired by Plaintiff, each Defendant signed an agreement containing restrictive covenants. Dkts. 28-2 (Mayberry), 96-1 (Cravey), 96-4 (Moore), 96-8 (Budwell). Among other things, Defendants agreed (1) not to solicit Plaintiff's employees or consultants to leave Plaintiff's employ and (2) not to use or disclose Plaintiff's confidential information and trade secrets. *See, e.g.*, Dkt. 28-2 at 3, 5.

On January 13, 2023, after working for Plaintiff for nearly three years, Defendant Budwell executed a separation agreement that included the same restrictive covenants. Dkt. 96-7. Budwell then accepted a position with Plaintiff's competitor, Defendants MyPlanAdvocate Solutions, Inc. and MyPlanAdvocate Insurance Services, Inc. (collectively, "MPA"). Dkt. 96-9. Shortly after Budwell's departure, Defendant Mayberry likewise began working for MPA, despite still being employed by Plaintiff. Upon his hiring at MPA, Mayberry transferred ETQ documents from his ETQ work e-mail account to his personal e-mail account. Dkts. 96-13, 96-14, 96-15, 96-16, 96-17, 96-18, 96-19. Mayberry then transferred the same documents from his personal e-mail account to his and Budwell's MPA work e-mail accounts. Dkt. 96-21. The transferred documents included charts

identifying Plaintiff's agents, production statistics, and Medicare resources. *See id.* Mayberry thereafter informed MPA's recruitment team that Defendant Moore would be submitting an application to work for MPA. Dkt. 96-22. On March 18, 2022, while still working for Plaintiff, Moore received an offer to work for MPA. Dkt. 96-23. After Moore received that offer, Mayberry informed Plaintiff of his resignation. Dkt. 96-24.

Brieanna Susaeta, an employee of Plaintiff, credibly testified at the evidentiary hearing that Mayberry and Budwell encouraged some of Plaintiff's employees to quit their positions at ETQ and work for MPA. *See* Dkt. 113 at 22−28. One such employee was Defendant Cravey, who shared with Ms. Susaeta her plans to work for MPA. *Id.* at 26−28. Like Mayberry, Cravey sent several ETQ documents from her ETQ e-mail account to her personal email account before transferring them to the MPA work e-mail accounts of herself, Mayberry, and several other high-ranking MPA employees. Dkt. 96-28. These documents included Plaintiff's internal sales call scripts, sales call instructions, training documents, and other internal guidance documents. *See id.*

On May 26, 2022, Plaintiff initiated this action after learning of Defendants' alleged conduct. Dkt. 1. Plaintiff brings several claims against Defendants, including breach of contract and misappropriation of trade secrets, *see* Dkt. 124. At this stage, Plaintiff moves for a preliminary injunction. Dkt. 28.

## LEGAL STANDARD

To obtain a preliminary injunction, a movant must satisfy four prerequisites: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if injunctive relief is not granted; (3) that the threatened injury to the plaintiff outweighs the threatened harm that the injunction may cause the defendant; and (4) that granting the injunction would not disserve the public interest. *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (internal quotes and citation omitted).

## ANALYSIS

Stressing an urgent need to protect its legitimate business interests, Plaintiff moves for a preliminary injunction enjoining Defendants from soliciting Plaintiff's employees and using or disclosing confidential information and trade secrets in violation of Defendants' restrictive covenant agreements.[1] Dkt. 28. The Court considers whether Plaintiff has established its burden of persuasion as to each of the four prerequisites to obtaining a preliminary injunction.

---

[1] While Plaintiff initially moved for a preliminary injunction that would also enforce Defendants' non-compete agreements, *see* Dkt. 28, Plaintiff has since abandoned that request, Dkt. 151 at 2.

4

## I.  Substantial Likelihood of Success on the Merits

Concerning the first prerequisite, the Court finds that Plaintiff has demonstrated a substantial likelihood of success on the merits of at least one of its claims. A successful breach of contract claim requires a plaintiff to show (1) a valid contract, (2) a material breach of that contract, and (3) damages. *Abbott Lab'ys, Inc. v. Gen. Elec. Cap.*, 765 So. 2d 737, 740 (Fla. 5th DCA 2000). Here, Plaintiff has identified what appear to be valid, enforceable restrictive covenant precluding solicitation of Plaintiff's employees and misappropriation of Plaintiff's confidential information and trade secrets. Based on credible testimony and evidence presented at the evidentiary hearing, Plaintiff has demonstrated that Defendants likely violated these covenants by soliciting Plaintiff's employees to work at MPA and transferring Plaintiff's internal documents to themselves and others working at MPA, thereby causing harm to Plaintiff's legitimate business interests. Accordingly, Plaintiff has shown a substantial likelihood of success on the merits of at least one claim warranting injunctive relief.

## II.  Irreparable Harm

The Court also finds that Plaintiff has shown a substantial threat of irreparable injury absent a preliminary injunction. "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Arthur J. Gallagher Serv. Co. v. Egan*, 514 F. App'x 839, 843 (11th Cir. 2013) (citation omitted). Under Florida

law, the violation of a restrictive covenant creates a rebuttable presumption of irreparable injury. Fla. Stat. § 542.335(1)(j). Given that Plaintiff has demonstrated a substantial likelihood of success on the merits, there exists a rebuttable presumption of irreparable injury. *See TransUnion Risk & Alt. Data Sols., Inc. v. MacLachlan*, 625 F. App'x 403, 406−07 (11th Cir. 2015). Defendants have not rebutted this presumption. Plaintiff has therefore satisfied the second prerequisite to obtaining a preliminary injunction.

## III. Balancing of Harms

As to the balancing of harms, the Court finds that the relative harms to the parties weigh in favor of issuing a preliminary injunction. At this stage, the relief that Plaintiff seeks would merely enforce two restrictive covenants to which Defendants previously agreed to be bound, thereby enjoining Defendants from (1) soliciting Plaintiff's employees and (2) using or disclosing Plaintiff's confidential information and trade secrets. Notably, Plaintiff does not presently seek to enforce Defendants' non-compete agreements, meaning that Defendants would not presently be precluded from working for Medicare-focused companies. *See* Dkt. 142-1 at 8; Dkt. 151 at 2. There would be little, if any, harm to Defendants under these terms. Conversely, without a preliminary injunction, Plaintiff would be harmed by the solicitation of its employees and the misappropriation of confidential information. Plaintiff has thus met the balancing of harms prerequisite.

6

## IV.    Public Interest

Finally, the requested preliminary injunction would not be adverse to the public interest. In fact, the public interest is served through the enforcement of contractual rights, including those found within restrictive covenants signed by employees. *See, e.g.*, *Hilb Rogal & Hobbs of Fla., Inc. v. Grimmel*, 48 So. 3d 957, 959−62 (Fla. 4th DCA 2010) (explaining that the public interest is served through the enforcement of restrictive covenants); *Pitney Bowes Inc. v. Acevedo*, No. 8-21808-CIV, 2008 WL 2940667, at *6 (S.D. Fla. July 28, 2008) ("[T]he public has a cognizable interest in the protection and enforcement of contractual rights."); *Se. Mech. Servs., Inc. v. Brody*, No. 8:08-cv-1151-T-30EAJ, 2008 WL 4613046, at *16 (M.D. Fla. Oct. 15, 2008) ("[A] preliminary injunction would affirmatively serve the public interest by protecting business from misappropriation of confidential information and resources."). With this understanding, Plaintiff has established the fourth and final prerequisite to obtaining a preliminary injunction.

## PRELIMINARY INJUNCTION

Based on the foregoing, Plaintiff's Motion for Preliminary Injunction, Dkt. 28, is **GRANTED** as follows:

1.  Defendants[2] will not use, disclose, or share any of Plaintiff's confidential

---

[2] The Court reiterates that, for purposes of this Order, "Defendants" refers to Aubrey Mayberry, Alisa Cravey, Rich Budwell, and Jonathan Moore.

information and trade secrets, including:

    a. information related to Plaintiff's operations, such as seminar or teaching materials, templates, techniques, models, call flows, scripts, guidance materials, and similar documents;

    b. employee personnel information, such as compensation, bonus structures, training, contact information;

    c. Plaintiff's financial status, billing systems, financial reports, accounting information, and financial plans; and

    d. documents that may contain or be derived from confidential information, works, or inventions or that may be connected with or derived from Defendants' employment with Plaintiff.

2. By June 2, 2023, Defendants shall (a) provide a declaration to Plaintiff identifying any of Plaintiff's confidential information or trade secrets that are, or have been, in Defendants' possession, custody, or control since leaving Plaintiff's employ, and (b) confer with Plaintiff about returning or destroying such materials.

3. Defendants shall not solicit, request, recruit, cause, encourage, or suggest any of Plaintiff's employees or consultants cease their employment or consulting relationships with Plaintiff to work for any business competing with Plaintiff.

4. This Preliminary Injunction is binding on Defendants and inures to the benefit of Plaintiff, its parent, assigns, and successors.

5. The Court finds that no bond is required, as there is no evidence that Defendants will suffer any economic harm from the issuance of this

8

preliminary injunction. *See Thursday LLC v. Klhip Inc.*, 8:17-CV-1587-T-36AEP, 2017 WL 6947456, at *2 (M.D. Fla. Dec. 11, 2017).

6. This Preliminary Injunction shall take effect immediately and will remain in effect until the entry of final judgment or an order indicating otherwise.

**DONE AND ORDERED** at Tampa, Florida, on May 18, 2023.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record
Defendants, *pro se*